UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARMEN YAPUNDZHYAN,

      Plaintiff,

      v.

OFFICER S. ESPEY, et al.,

      Defendants.

Case No.  12-cv-03425-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff Armen Yapundzhyan is a state prisoner who has been a participant in the California Department of Corrections and Rehabilitation's ("CDCR's") Mental Health Service Delivery System at Salinas Valley State Prison ("SVSP"), where he was previously incarcerated. Badura Decl., Dkt. 34-1 at CDCR 021.  Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983, stemming from an incident at SVSP.  Dkts. 1, 4.  Plaintiff alleged that on September 8, 2005, prison staff at SVSP failed to prevent an altercation between him and his cellmate, John Doe ("inmate Doe"), and then wrongfully retained Plaintiff in administration segregation ("Ad Seg") as a result.  Dkt. 4 at 1-2.  After an initial review, the Court found that Plaintiff's "claims may be barred by the statute of limitations."  Dkt. 9 at 2.  Therefore, the Court dismissed the complaint with leave to amend for Plaintiff to address the issue that his claims were barred by the statute of limitations.  *Id.* at 3.

Thereafter, Plaintiff filed his "First Amended Complaint" ("FAC"), the operative complaint in this action, in which he argued that his claims were "not barred under the statute of limitations" because "for more than six years, Plaintiff was awaiting criminal charges in the alleged 2005 incident."  Dkt. 10 at 1.  Plaintiff noted that he was retained in Ad Seg without any rules violation report ("RVR") regarding the September 8, 2005 incident and that "it was only until 2011" that he was "found guilty pending that criminal charges . . . for assault."  *Id.*  Thus, Plaintiff claims that he only learned of "the matter relevant to bring[ing] this civil [suit]" in 2011. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Although the Court acknowledged that it might "still have doubts whether the claims

2    related to the 2005 incident are timely," it concluded that it could not "*sua sponte* dismiss the

3    complaint as time-barred." Dkt. 11 at 2.  The Court then found that Plaintiff raised two cognizable

4    claims: (1) "a claim for deliberate indifference to [his] safety in violation of his Eighth

5    Amendment rights" against Defendant Correctional Officer Espey; and (2) a claim for "denial of

6    due process" regarding his placement and retention in Ad Seg against the following Defendants:

7    Chief Deputy Wardens M. Moore and J. Soto; Associate Warden L. Trexler; Facility Captains G.

8    Lewis and J. McCall; Lieutenants B. Sherman and R. Martinez, as well as Case Counselors G.

9    Gauch, A. Williams, I. Herrera, Dr. Batter, and R. Burgh.  *Id.* at 3, 4.  The Court ordered service

10   on the above named defendants.  *Id.* at 5-6.  The Court later dismissed Defendants Lewis,

11   Sherman, Gauch, Williams, and Batter because service had "not been effectuated" and Plaintiff

12   "failed to show cause why these Defendants should not be dismissed without prejudice pursuant to

13   Rule 4(m)."  Dkt. 32 at 2.

14   Before the Court is the remaining Defendants' Motion for Summary Judgment and Motion

15   to Dismiss.  Dkt. 33.  They argue that (1) the action is barred by the applicable statute of

16   limitations; (2) there are no genuine issues of material fact in dispute because the indisputable

17   evidence shows: (a) Defendant Espey was not deliberately indifferent to Plaintiff's safety needs,

18   and (b) Defendants did not violate Plaintiff's due process rights because he was not placed in Ad

19   Seg based solely on the September  8, 2005 incident; (3) Plaintiff failed to exhaust administrative

20   remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to

21   his claims; (4) Plaintiff's deliberate indifference to safety claim against Defendant Espey is barred

22   by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (5) Plaintiff has not shown a causal connection

23   between several named Defendants and his due process claim.  Dkt. 33 at 8-9.

24   To date, Plaintiff has not filed an opposition to Defendants' dispositive motion, even

25   though he was previously granted a *sua sponte* extension of time to do so.[1]  Dkt. 42.

26

27   _____

28   [1] On May 15, 2015, the Court noted that Plaintiff had been transferred from Pelican Bay
     State Prison ("PBSP") to the California Medical Facility ("CMF").  Dkt. 42 at 1.  The Court
     assumed that Plaintiff's transfer to CMF may have been close in time to the filing of Defendants'
     dispositive motion.  *Id.* at 1-2.  Therefore, the Court found that an extension of time for Plaintiff to

For the reasons outlined below, the Court GRANTS Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies as to all claims.

## DISCUSSION

I.    **FACTUAL BACKGROUND**[2]

    A.    **Plaintiff's Version**

Plaintiff claims that on September 8, 2005, he informed Defendant Espey that he and his cellmate, inmate Doe, were "having problems and [were] about to fight while in cell F-D-B-8-227." Dkt. 10 at 3. Plaintiff alleges that Defendant Espey "appeared unconcerned," "showed no consideration to the seriousness and intensity of the matter," and "failed to protect Plaintiff as well as his cellmate [] by walking away from the door in total disregard to the pleas of the Plaintiff and his cellmate." *Id.*

Plaintiff claims that a "fight subsequently ensued between [him] and his cell mate [inmate Doe], and with a lucky punch [he] hit [inmate Doe], after he was attacked first by [inmate Doe], who fell to the floor." *Id.* Plaintiff alleges that he yelled "man down." *Id.*

Plaintiff was removed from his cell and "illegally retained" in Ad Seg "with no due process of the law for two (2) consecutive years with no official charges for the September 5, 2005 incident." *Id.* at 4. Plaintiff claims that he was held in Ad Seg for a "Title 15. Violation of Rule

---

file an opposition was warranted, and granted Plaintiff an extension of time up to an including twenty-eight days from the May 15, 2015 Order to file his opposition. The deadline has since passed, and Plaintiff has not filed an opposition.

    [2] This Order contains many acronyms. Here, in one place, they are:

| | |
|---|---|
| Ad Seg | Administrative Segregation |
| ASU | Administrative Segregation Unit |
| CDCR | California Department of Corrections and Rehabilitation |
| CSR | Classification Staff Representative |
| EOP | Enhanced Outpatient Program |
| IATS | Inmate Appeals Tracking System |
| ICC | Institutional Classification Committee |
| ISU | Investigative Services Unit |
| NMC | Natividad Medical Center |
| OCS | Office of Correctional Safety |
| RVR | Rules Violation Report |
| SART | Sexual Assault Response Team |
| SHO | Senior Hearing Officer |
| SHU | Security Housing Unit |

United States District Court
Northern District of California

1   3005 (conduct) charge."[3]  *Id.*  Plaintiff further claims that he "suffered a due process violation

2   when the Defendant, or his agents[,] failed to acknowledge procedure by issuing a rules violation

3   report within 15 days to 30 days"; therefore, for "six (6) consecutive years [Plaintiff] did not

4   receive a rules violation report as to why he was retained in [Ad Seg] pending an investigation into

5   [the] alleged misconduct."  *Id.*

6          Specifically, Plaintiff claims that on January 12, 2006, he appeared before SVSP's

7   Institutional Classification Committee ("ICC") regarding his placement in Ad Seg, and

8   Defendants Moore, Lewis, Gauch and Williams "all did nothing after six months of placement in

9   [Ad Seg] pending an alleged investigation in which all were aware that Plaintiff was never served

10  any rule[s] violation report."  *Id.* at 5-6.  Plaintiff claims that "two additional years later," he

11  appeared before Defendant Herrera "in a pre-classification manner regarding [Plaintiff's] due

12  process violation into the alleged September 8, 2005 incident that a committee was summon[ed]

13  on August 2, 2007 again in which . . . Plaintiff[']s rights were still being violated under the 8th

14  Amendment of the U.S. Constitution[,] who still failed to correct the violations."  *Id.* at 6.

15  Plaintiff claims that it "was'nt [sic] until September 13, 2011 that [SVSP] Personnel B. Sherman

16  read him his rights that he learned what he was being charged with based on a D.N.A. test that

17  should have only taken six (6) months to resolve . . . ."  *Id.* at 4-5.  Also, on September 13, 2011,

18  Defendants Sherman, McCall and Trexler issued an RVR.  *Id.* at 7.  Defendant Martinez had

19  drafted an "illegal report of the September 8, 2005 incident."  *Id.*  Plaintiff claims that neither the

20  RVR nor Defendant Martinez's report indicated that Defendant Espey "failed to protect the

21  Plaintiff and inmate [Doe]" and that "Plaintiff was the reporting party who reported to Officer

22  Espey, the fact that he and his cellmate were about to fight which amounted to a failure to

23  protect."  *Id.*  Finally, Plaintiff claims that on November 23, 2011, he appeared before Defendants

24  Soto, McCall, Batter, and Burgh,[4] and they "did nothing to correct the ongoing due process

25  _____

26          [3] Plaintiff does not specify the exact subsection of section 3005 of Title 15 of the
    California Code of Regulations, but the Court notes that subsection (c) states in part, "Inmates
27  shall not willfully commit . . . a violent injury to any person or persons . . . ."  Cal. Code Regs. tit.
    15, § 3005(c).
28          [4] In his FAC, Plaintiff spells Defendant Burgh's name as "Rurgh."  Dkt. 10 at 6.  However,
    the Court has since been informed that the correct spelling is "Burgh."  Dkts. 18 at 1; 25 at 1.

United States District Court
Northern District of California

1    violation . . . ."  *Id.* at 6-7.  Plaintiff seeks monetary damages.  *Id.* at 8.

2    **B.  Defendants' Version[5]**

3      **1.  September 8, 2005 Incident**

4        According to the Crime/Incident Report relating to the September 8, 2005 incident,

5 Defendant Espey was "completing the Bar Box security checks" on that date at 9:44 p.m. when he

6 heard a loud noise coming from Plaintiff's cell.  Badura Decl., Dkt. 34-1 at CDCR 033.

7 Defendant Espey approached the cell, and the cellmates (Plaintiff and inmate Doe) "stated they

8 were having problems."  *Id.*  Defendant Espey then notified Correctional Sergeant Peterson "of the

9 situation."  *Id.*  Plaintiff then yelled, "Man down."  *Id.*  Defendant Espey, Sergeant Peterson along

10 with Officers Torres and Ortiz responded to Plaintiff's cell.  *Id.*  Plaintiff stated, "I knocked him

11 down."  *Id.*  The officers noticed inmate Doe on the floor "unresponsive to Sergeant Peterson's

12 orders to submit to handcuffs."  *Id.*  Plaintiff was removed from the cell and placed in a holding

13 cell.  *Id.*  After being unsuccessful in "several attempts to get any response" from inmate Doe,

14 Sergeant Peterson notified Lieutenant J. D. Bennett, who authorized the emergency extraction of

15 inmate Doe for medical reasons.  *Id.*  Inmate Doe was then taken to the emergency room where he

16 became responsive to medical staff and made allegations that Plaintiff "had sexually assaulted

17 him."  *Id.*  The Investigative Services Unit ("ISU") was notified of the alleged sexual assault.  *Id.*

18 The Sexual Assault Response Team ("SART") was also notified and responded to complete the

19 sexual assault evaluation process.  *Id.*

20        Inmate Doe was transported to Natividad Medical Center ("NMC") for a SART evaluation.

21 *Id.*  Prior to beginning the SART evaluation, ISU Officer De Los Santos interviewed inmate Doe,

22 who informed the officer that Plaintiff had been "demanding sex for the past two days."  *Id.* at

23 CDCR 006.  Inmate Doe claimed that he had moved into Plaintiff's cell "two days prior to the

24

25        [5] In support of their motion for summary judgment, Defendants have filed an unopposed

26 request for judicial notice ("RJN").  Dkt. 39.  Good cause appearing, Defendants' RJN is
GRANTED.  The Court may take judicial notice of the February 2, 2011 Abstract of Judgment —

27 Prison Commitment — Indeterminate issued by the Monterey County Superior Court in Case No.
SS082030A, filed as Exhibit A to the RJN, because "a court may take judicial notice of its own

28 records in other cases, as well as the records of an inferior court in other cases."  *United States v.
Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

1   assault and, on the condition that there was to be no sex between them unless [Plaintiff] had

2   undergone sexually transmitted disease blood tests." *Id.*  Inmate Doe alleged that, at that time,

3   Plaintiff had not yet taken the tests.  *Id.*  According to inmate Doe, on the night of the assault,

4   Plaintiff verbally threatened him and they "got involved in a physical altercation." *Id.* at CDCR

5   006-007.  Inmate Doe then fell backwards and hit the desk stool as he fell back.  *Id.* at CDCR 007.

6   Inmate Doe claims that he suffered back pain from the fall, which was when Plaintiff

7   "overpowered him and sodomized him under the desk at the back of the cell." *Id.*  After the

8   assault, inmate Doe tried to alert officers, but Plaintiff prevented him from doing so.  *Id.*   Plaintiff

9   later flooded the cell and "told officers to get [inmate Doe] out of the cell.  *Id.*

10      The next day, at approximately 8:20 a.m., Plaintiff was transported to NMC for a SART

11   evaluation.  *Id.*

12      After their SART evaluations were completed, both inmates were returned to SVSP's

13   Administrative Segregation Unit ("ASU") and rehoused separately.  *Id.* at CDCR 033.

14      An ongoing investigation was to be conducted into the alleged sexual assault, and "the

15   information would be pending referral to the Monterey County District Attorney's Office for

16   possible prosecution once the incident was fully investigated and the results of the sexual assault

17   evaluation were completed.  *Id.* at CDCR 004.

18      On January 3, 2007, the California Bureau of Forensic Services Laboratory reported that

19   the evidence that was collected and tested showed that sperm from Plaintiff's body was found on

20   the inmate Doe's rectal slides.  *Id.* at CDCR 008.  This provided evidence that Plaintiff was the

21   source of the DNA detected on the rectal slides.  *Id.*  Inmate Doe's and Plaintiff's dried blood

22   stains as well as inmate Doe's rectal slides were transferred to the Department of Justice DNA

23   Laboratory.  *Id.*

24      On February 21, 2007, an ISU officer conducted an interview with Plaintiff regarding the

25   sexual assault.  *Id.*  Prior to the interview, Plaintiff was read his *Miranda* rights.  *Id.*   Plaintiff

26   stated that he understood his rights and chose to remain silent.  *Id.*

27      On November 19, 2010, Plaintiff was found guilty by Court Trial and was convicted of

28   "Sodomy By Use of Force" and "Sodomy While Confined In Prison/Jail." *Id.* at CDCR 004,

United States District Court
Northern District of California

6

1     CDCR 030.  Plaintiff received an additional sentence of twenty-five years to life in prison.  Dkt.

2     39-1 at 2-3.  Plaintiff has appealed this conviction.  Badura Decl., Dkt. 34-1 at CDCR 031.

3          On August 22, 2011, Defendant Martinez issued an RVR against Plaintiff for the act of

4     "Rape/Sodomy of an Inmate."  *Id.* at CDCR 021-025.

5          On September 13, 2011, Plaintiff was found guilty of "Rape/Sodomy of an Inmate" under

6     the prison's RVR process.  *Id.* at CDCR 025.  According to Part C of the RVR, Lieutenant E. B.

7     Sherman, the Senior Hearing Officer ("SHO") "agree[d] with the Mental Health Assessment

8     authored by D. C. Zimmerman, Ph.D., which states the inmate['s] mental health disorder did

9     appear to contribute to the behavior that led to the RVR . . . ."[6]  *Id.* at CDCR 022.  SHO Sherman

10    then referred the matter to ICC for "Program Review and possible [Security Housing Unit

11    ("SHU")] Assessment."  *Id.*  It seems that because Plaintiff had already been sentenced to twenty-

12    five-years-to-life for the criminal sodomy charges stemming from the September 8, 2005 incident,

13    he was not assessed any forfeiture of credits as a penalty for being found guilty of the RVR.  *Id.* at

14    CDCR 022, 030.  Plaintiff was "counseled, warned and reprimanded regarding future behavioral

15    expectations."  *Id.* at CDCR 022.

16         **2.  Plaintiff's Placement Into Ad Seg Between May 2005 And September 2011**

17         Plaintiff was placed into Ad Seg numerous times between May 2005 and September 2011

18    for a variety of reasons.  *Id.* at CDCR 046-056.

19         On May 10, 2005, Plaintiff was placed into Ad Seg for sexual harassment because he

20    masturbated in front of a female officer and told her "What do you expect working in a man's

21    prison."  *Id.* at CDCR 046.

22         On June 8, 2005, Plaintiff was again placed in Ad Seg while the disciplinary process was

23    completed on Plaintiff's sexual harassment of prison staff.  He was also retained there because his

24    behavior created a "hostile environment."  *Id.* at CDCR 047.

25         On June 23, 2005, Plaintiff again was retained in Ad Seg because of his sexual harassment

26

27        [6] According to the RVR Mental Health Assessment, Dr. Zimmerman stated that Plaintiff
      "has a psychotic disorder, often responding to internal stimuli or misperceiving environmental

28    cues . . . [h]is thinking is disorganized, and he has grandiose [and] paranoid delusions."  Badura
      Decl., Dkt. 34-1 at CDCR 029.

United States District Court
Northern District of California

of prison staff.  *Id.* at CDCR 048.

During the September 8, 2005 incident at issue, the record shows that Plaintiff was still being held in Ad Seg based on his placement three months earlier in June of 2005.  Badura Decl., Dkt. 34-2 at CDCR 057-058.

Starting on November 17, 2005, prison records confirm that Plaintiff was retained in Ad Seg in part while prison authorities investigated the September 8, 2005 incident and the sexual assault allegations.  *Id.* at CDCR 058-061.

On February 9, 2006, Plaintiff was released from Ad Seg on February 9, 2006.  *Id.* at CDCR 061.

On February 17, 2006, Plaintiff briefly returned to Ad Seg so that SVSP prison officials could investigate his allegations of staff misconduct, and he was released on February 21, 2006.  Badura Decl., Dkt. 34-1 at CDCR 049.

On May 25, 2006, Plaintiff was placed in Ad Seg because he threatened staff.  *Id.* at CDCR 050.

On May 3, 2007, Plaintiff was placed in Ad Seg again because of his "allegations of staff misconduct and self express[ed] safety concerns."  *Id.* at CDCR 051.  Nothing in the record indicates when he was released from this Ad Seg placement; however, it seems that Plaintiff was back in general population at least in December of 2009.  *Id.* at CDCR 052.

On December 22, 2009, Plaintiff was placed in Ad Seg because he again expressed safety concerns.  *Id.*

On January 6, 2010, Plaintiff was retained in Ad Seg, because he received an RVR for indecent exposure with prior episodes.  *Id.* at CDCR 054.  Again, there is no indication as to the exact date when Plaintiff was released from this Ad Seg placement, but the record shows that he was back in general population in April of 2011.  *Id.* at CDCR 055.

On April 28, 2011, Plaintiff was placed in Ad Seg due to self-expressed safety concerns.  *Id.*

And on September 7, 2011, Plaintiff was retained in Ad Seg after an investigation revealed he had enemies on the yard where he was previously housed, and because he had received an RVR

United States District Court
Northern District of California

8

for "Rape/Sodomy of an Inmate." *Id.* at CDCR 056. As mentioned above, Plaintiff was further retained in Ad Seg because he was referred to possible SHU Assessment after he was found guilty of the aforementioned RVR six days later, on September 13, 2011. *Id.* at CDCR 022, 025.

### 3. Committee Proceedings On Plaintiff's Housing and Placements In Ad Seg

Between June 30, 2005 and November 23, 2011, there were at least 32 committee hearings concerning Plaintiff's housing and his placements in administrative segregation. Badura Decl., Dkt. 34-2 at CDCR 057-092.

The committees often released Plaintiff from Ad Seg, such as on February 9, 2006, September 21, 2006, August 2, 2007, and July 22, 2010, and also recommended that Plaintiff be transferred to different institutions based on security concerns and other housing considerations. *Id.* at CDCR 061, 064, 068, 080. Specifically, as mentioned above, the record shows that Plaintiff was released from Ad Seg on February 9, 2006, after he had been retained there in part so that staff could investigate his rape charge. *Id.* at CDCR 058, 061.

Continuing the timeline from September 13, 2011, the last date from the previous section relating to Ad Seg placement, Plaintiff was retained in Ad Seg on that date after he was found guilty of the aforementioned RVR for "Rape/Sodomy of an Inmate." Badura Decl., Dkt. 34-1 at CDCR 022, 025. Two days later, on September 15, 2011, Plaintiff appeared before the committee for his annual review, in which the ICC elected to refer the case to the Classification Staff Representative ("CSR") and requested a 70 day ASU extension to complete the RVR process. Badura Decl., Dkt. 34-2 at CDCR 088.

On November 23, 2011, Plaintiff appeared before the committee for a program review, in which the ICC elected to refer the case to the CSR for his "transfer to PBSP IV (180/EOP)[7] . . . ." *Id.* at CDCR 090.

---

[7] "EOP" or Enhanced Outpatient Program "provides care to mentally disordered inmate-patients who would benefit from the structure of a therapeutic environment that is less restrictive than inpatient settings. This may include response to crisis symptoms which require extensive treatment, but can be managed as outpatient therapy with several psychotherapy sessions or medication adjustment with follow-up visits." CDCR Mental Health Program Guide 8, http://www.cdcr.ca.gov/dhcs/docs/mental%20health%20program%20guide.pdf; *see also Williams v. Kernan*, 2009 WL 2905760, *1 (E.D. Cal. 2009) (describing the four levels of care in the CDCR's mental health delivery system).

1    On December 14, 2011, the CSR endorsed the ICC's referral and approved Plaintiff's

2    transfer to PBSP IV (180 EOP).  *Id.* at CDCR 091.

3    On January 10, 2012, Plaintiff was transferred from SVSP to PBSP where he was retained

4    in EOP.  *Id.* at CDCR 091.  As mentioned earlier, Plaintiff has since been transferred to CMF.  *See*

5    *supra* note 1; Dkt. 42 at 1.

6    **II.      DISCUSSION**

7    **A.      Legal Standard for Summary Judgment**

8    Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

9    on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The

10   court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

11   material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v.*

12   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of

13   establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

14   317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in

15   the record").  If the moving party meets this initial burden, the burden then shifts to the non-

16   moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*,

17   477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

18   (1986).

19   The failure to exhaust administrative remedies is an affirmative defense that must be raised

20   in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

21   banc).  The defendants have the initial burden to prove "that there was an available administrative

22   remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  If the

23   defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence

24   showing that there is something in his particular case that made the existing and generally

25   available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of

26   proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment

27   should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

28   A district court may only consider admissible evidence in ruling on a motion for summary

*United States District Court*
*Northern District of California*

10

United States District Court
Northern District of California

1   judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

2   In support of the motion for summary judgment, Defendants have presented declarations from the

3   following: Correctional Case Records Manager Penny Badura; Acting Chief of the Office of

4   Appeals R. Briggs; and SVSP Appeals Coordinator E. Medina.  Dkts. 34-36.

5       While Plaintiff has not filed an opposition, he has filed a verified FAC.  Dkt. 10.  The

6   Court will construe his FAC as an affidavit under Federal Rule of Civil Procedure 56, insofar as it

7   is based on personal knowledge and sets forth specific facts admissible in evidence.  *See*

8   *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

9       **B.    Failure to Exhaust Administrative Remedies**

10      Defendants claim that the prison has no record of any of the claims at issue in this action as

11  having been exhausted at the final level of review.  Dkt. 33 at 16-18.  Therefore, Defendants argue

12  that they are entitled to summary judgment based on Plaintiff's failure to exhaust his

13  administrative remedies.  *Id.* at 18.

14          **1.    Legal Framework**

15      The PLRA requires a prisoner to exhaust "available administrative remedies" before

16  bringing an action with respect to prison conditions.  42 U.S.C. § 1997e(a).  Exhaustion of all

17  "available" remedies is mandatory; those remedies need not meet federal standards, nor must they

18  be "plain, speedy, and effective."  *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  The PLRA

19  requires proper exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

20  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

21  rules because no adjudicative system can function effectively without imposing some orderly

22  structure on the course of its proceedings."  *Id.* at 90-91.  Thus, compliance with prison grievance

23  procedures is required by the PLRA to exhaust properly.  *Id.*  The PLRA's exhaustion requirement

24  cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative

25  grievance or appeal."  *Id.* at 84.

26      The CDCR provides its inmates and parolees the right to appeal administratively "any

27  departmental decision, action, condition, or policy which they can demonstrate as having an

28  adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its

United States District Court
Northern District of California

inmates the right to file administrative appeals alleging misconduct by correctional officers.  Cal. Code Regs. tit. 15, § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member, (2) first formal level appeal filed with one of the institution's appeal coordinators, (3) second formal level appeal filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level").  Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009).  This satisfies the administrative remedies exhaustion requirement under Section 1997e(a).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  A defendant may raise a failure to exhaust defense through a motion for summary judgment.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  Under *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).  The burden then shifts to the plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.*  The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff.  *Id.*

### 2.  Analysis

Defendants allege as follows:

> Plaintiff's prison records prove that he never submitted grievances through CDCR's administrative grievance process concerning his claim that Officer Espey was deliberately indifferent to his safety on September 8, 2005, or that Defendants R. Martinez, J. McCall, R. Burgh, L. Trexler, I. Herrera, M. Moore, and J. Soto violated his due-process rights concerning his alleged placement in administrative segregation on September 8, 2005.  (Briggs Decl. ¶¶ 6-8 and Exh. A; Medina Decl. ¶¶ 7-11 and Exhs. A-M.) Plaintiff's grievance history for Salinas Valley shows he submitted thirty-nine inmate appeals between September 30, 2004 and July 9, 2010, concerning his conditions of confinement at that institution,

12

1

but that none of the appeals that were accepted for review addressed his claims against Defendants.  (Medina Decl. ¶¶ 7-11 and Exhs. A-M.)

2

3

This appeal history shows that Plaintiff did not exhaust the administrative remedies that were available to him concerning his claim that Officer Espey was deliberately indifferent to his safety on September 8, 2005, or that the remaining Defendants violated his due-process rights concerning his placement in administrative segregation.

4

5

6

Dkt. 33 at 9-10.

7

Meanwhile, Plaintiff has not filed an opposition to Defendants' motion, even though he

8

was given an extension of time to do so.  In his FAC, Plaintiff does not indicate whether he

9

exhausted administrative remedies as to his claims.  The Court notes that the only time Plaintiff

10

makes a reference to the grievance process was when he filled out the civil rights complaint form

11

when he initiated this action.  In that original complaint form, Plaintiff indicated that his "place of

12

present confinement" was at "Pelican Bay State Prison."  Dkt. 1 at 2.  Plaintiff indicated that there

13

was a grievance procedure at PBSP.  *Id.*  When asked if he "presented the facts for complaint for

14

review through the grievance procedure," he answered, "Yes."  *Id.*  He also added, "Inadquite [sic]

15

Appeal Process."  *Id.*  The form further required Plaintiff to "list the appeal number and the date

16

and result of the appeal at each level of review"; however, he responded "N/A."  *Id.* at 2-3.

17

Finally, the form inquired as follows: "Is the last level to which you appealed the highest level of

18

appeal available to you?"  *Id.*  Plaintiff answered "Yes"; however, he does not support his

19

conclusory answer with any further explanation.  Because the aforementioned allegations were not

20

included in his FAC, the Court may disregard such allegations.  Even if they were included in the

21

FAC, Plaintiff's allegations relating to exhaustion seem unrelated to the claims at issue in the

22

FAC, which stem from a 2005 incident at *SVSP*, and not at PBSP.  Furthermore, Plaintiff does not

23

support his allegations; therefore, they are conclusory at best.

24

Defendants met their initial burden as the moving party by setting forth evidence to

25

demonstrate Plaintiff's non-exhaustion, specifically by conducting a search of the CDCR's records

26

and finding no grievances submitted to the Director's level by Plaintiff concerning the claims at

27

issue.  *See Paramo*, 775 F.3d at 1191.  Defendants cite the declarations of Acting Chief Briggs of

28

the Office of Appeals and Appeals Coordinator Medina who have reviewed Plaintiff's grievances

United States District Court
Northern District of California

13

and concluded that Plaintiff did not submit any grievances concerning either his deliberate indifference to safety claim against Defendant Espey or his due process allegations against the remaining Defendants that were accepted at any level of review.  Briggs Decl., Dkt. 35 at 3-4; Medina Decl., Dkt. 36 at 5-6.  Specifically, Appeals Coordinator Medina, who is "responsible for screening inmate grievances, coordinating their processing, and maintaining records regarding inmate grievances," attests that a search of the database containing records of all inmate appeals filed by Plaintiff at SVSP was conducted and that the search produced a grievance activity report showing proof that Plaintiff submitted a total of thirty-nine non-medical inmate appeals between September 30, 2004 and July 9, 2010.  Medina Decl., Dkt. 36 at 1, 3.  Appeals Coordinator Medina reviewed the grievance activity report and "also reviewed the records associated with each entry on the report that are maintained in the Inmate Appeals Tracking System ("IATS") and states as follows relating to thirteen inmate appeals that were accepted for review:

> Yapundzhyan submitted the following inmate grievances between September 27, 2005 and July 9, 2010 that were accepted for review:
>
> a) An inmate grievance that was submitted at the informal level of review that has no grievance number, received on September 27, 2005, in which Yapundzhyan requested a copy of California Rehabilitation Center forms.  A true and correct copy of screen shots from IATS concerning this grievance is attached as Exhibit B.
>
> b) Inmate grievance number SVSP-D-06-00691, received on March 3, 2006, that concerned a staff complaint Yapundzhyan made against Correctional Officer Ayozie regarding Yapundzhyan's allegation that Officer Ayozie intentionally hit him in the face with a cell door, which was granted in part at the first level of review and the second level of review.  A true and correct copy of this grievance and the second level response is attached as Exhibit C.
>
> c) An inmate grievance that was submitted at the informal of level review that has no grievance number, received on March 17, 2006, that was denied on April 14, 2006 and was not submitted to the first level of review.  This grievance concerned the clothing that inmates are required to wear when they exercise.  A true and correct copy of screen shots from IATS concerning this grievance is attached as Exhibit D.
>
> d) An inmate grievance that was submitted at the informal level of review that has no grievance number, received on March 28, 2006, that was denied on April 14, 2006 and was not submitted to the first level of review.  This grievance concerned questions Yapundzhyan had about the jumpsuits inmates wear during non-contact visits.  A true and correct copy of screen shots from IATS concerning this

grievance is attached as Exhibit E.

e) Inmate grievance number SVSP-D-06-01728, received on June 8, 2006 concerning Yapundzhyan's claim that custody staff assaulted him after he refused to cuff-up, that was granted in part on August 11, 2006.  A true and correct copy of this grievance and the first level response is attached as Exhibit F.

f) Inmate grievance number SVSP-D-06-2721, received on September 8, 2006, that concerned a claim that staff yelled at Yapundzhyan about socks and sheets, that was withdrawn.  A true and correct copy of this grievance and the first level response, confirming that Yapundzhyan withdrew the grievance, is attached as Exhibit G.

g) An inmate grievance that was submitted at the informal level of review that has no grievance number, received on October 16, 2006 and concerning property, that was withdrawn by Yapundzhyan.

h) An inmate grievance that was submitted at the informal level of review that has no grievance number, received on December 22, 2006, that concerned a transfer issue where Yapundzhyan was requesting to be placed in the Correctional Clinical Case Management System (CCCMS), and was granted in part on May 25, 2007 at the informal level of review.  A true and correct copy of screen shots from IATS concerning this grievance is attached as Exhibit H.

i) Inmate grievance number SVSP-D-07-00195, that was received at the first level of review on January 11, 2007, concerning a complaint Yapundzhyan made about staff allegedly interfering with his psychiatric treatment.  This grievance was ultimately denied at the third level of review on June 19, 2007.  A true and correct copy of this grievance and responses to it are attached as Exhibit I.

j) An inmate grievance that was submitted at the informal level of review that has no grievance number, received on April 12, 2007, that concerned Yapundzhyan's living conditions, specifically his request for a clothing exchange, that was granted on April 27, 2007 at the informal level of review.  A true and correct copy of screen shots from IATS concerning this grievance is attached as Exhibit J.

k) Inmate grievance number SVSP-D-08-1428, received on March 21, 2008, that concerned Yapundzhyan's request for credit restoration based on a[n] [RVR] he had received for smoking.  This grievance was granted in part on May 8, 2008.  A true and correct copy of this grievance and the first level response is attached as Exhibit K.

1) Inmate grievance number SVSP-D-08-01874, received on April16, 2008, that concerned the calculation completed on Yapundzhyan's release date, that was granted in part on May 5, 2008, in that a manual calculation was repeated to confirm Yapundzhyan's date of release.  A true and correct copy of this grievance and the first level response is attached as Exhibit L.

m) Inmate grievance number SVSP-L-10-01773, received on July 9, 2010, that concerned a property issue and was withdrawn.  A true and correct copy of this grievance is attached as Exhibit M.

*Id.* at 3-5; Dkts. 36-1; 36-2.  Appeals Coordinator Medina states that "[a]ll other grievances that Yapundzhyan submitted at [SVSP] were either rejected because he did not comply with procedural requirements, and or were cancelled because he violated time constraints," and adds that "Yapundzhyan did not appeal the cancellation decisions or resubmit his grievances consistent with required procedures."  Medina Decl., Dkt. 36 at 6.  Finally, Appeals Coordinator Medina states that Plaintiff  "also participated in three group grievances at [SVSP], including inmate grievance number SVSP-08-02303 that concerned inmates' access to movies, videos and television, inmate grievance number SVSP-08-04602 [that] addressed the items inmates were allowed  to take into the recreational yard, and grievance number SVSP-10-02607 that concerned inmates' yard access on Saturdays and Sundays."  *Id.*  All three of these group grievances were denied at the third level of review.  *Id.*

Meanwhile, Acting Chief Briggs reviews all appeals filed with the Director, the highest level of appeal available to California prisoners.  Briggs Decl., Dkt. 35 at 1.  Acting Chief Briggs attests that a search of the database containing records of all administrative appeals filed with the Director was conducted and that the search produced proof that Plaintiff has exhausted a total of four inmate appeals, and "[a]ll other appeals submitted by Yapundzhyan were screening out."  *Id.* at 4.  Of these four exhausted inmate appeals, the record shows that three were the aforementioned group inmate appeals arising out of SVSP.  *Id.*, Dkt. 35-1 at 1.  The fourth inmate appeal related to inmate grievance number SVSP-D-07-00195, which was one of the appeals accepted for review discussed above, and concerned a complaint Plaintiff made about staff allegedly interfering with his psychiatric treatment.  As mentioned, this grievance was denied at the Director's level of review on June 19, 2007.  Thus, the Court notes that Defendants have presented evidence that none of the four exhausted inmate appeals dealt with the claims at issue in this action—Plaintiff's deliberate indifference to safety claim against Defendant Espey or his due process claim against the remaining Defendants.

Under *Albino*, Defendants have therefore proven that there was an available administrative

16

United States District Court
Northern District of California

remedy and that Plaintiff did not exhaust that available remedy.  *See Paramo*, 775 F.3d at 1191.

The burden then shifts to Plaintiff to come forward with evidence showing that there is something

in his particular case that made the existing and generally available administrative remedy

effectively unavailable to him.  *Id.*; *Albino*, 747 F.3d at 1172.  However, Plaintiff has not done so,

having failed to file an opposition or any other pleading in response to Defendants' motion.

Instead, as mentioned above, Plaintiff has only made conclusory and unsupported allegations as

proof of exhaustion.  Although Plaintiff alleged in his initial filing that the administrative appeals

process was inadequate, such conclusory allegations are insufficient to defeat dismissal for failure

to exhaust.  *See White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Thus, the aforementioned

conclusory evidence presented by Plaintiff is insufficient to defeat Defendants' motion for

summary judgment.  Furthermore, the fact that Plaintiff was able to file thirty-nine non-medical

inmate appeals between September 30, 2004 and July 9, 2010 suggests that he had adequate access

to the administrative appeals process.  *See* Medina Decl., Dkt. 36 at 1, 3.  Meanwhile, the evidence

produced by Defendants *is sufficient* to carry their ultimate burden of proof in light of Plaintiff's

verified factual allegations.  Accordingly, Defendants are entitled to summary judgment based on

the failure to exhaust administrative remedies, and their motion is GRANTED as to all claims.[8]

### CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.     Defendants' unopposed request for judicial notice is GRANTED.  Dkt. 39.

2.     The Court GRANTS Defendants' motion for summary judgment based on the

failure to exhaust administrative remedies as to all claims.  Dkt. 33.  Plaintiff's FAC is

DISMISSED WITHOUT PREJUDICE for failure to exhaust.  Defendants' alternative motion to

dismiss is DENIED as moot.

---

[8] The Court's finding that Defendants are entitled to summary judgment as to all claims in Plaintiff's FAC (based on the failure to exhaust administrative remedies) obviates the need to address Defendants' alternative arguments in their motion to dismiss, including that: (i) the action is barred by the applicable statute of limitations; (ii) no genuine issues of material fact in dispute exist; (iii) Plaintiff's deliberate indifference to safety claim against Defendant Espey is barred by *Heck*; and (iv) Plaintiff has not shown a causal connection of the alleged harm to several named Defendants.  Therefore, the motion to dismiss is DENIED as moot.

1          2.          The Clerk of the Court shall enter judgment, terminate all pending motions, and

2   close the file.

3          3.          This Order terminates Docket Nos. 33 and 39.

4          IT IS SO ORDERED.

Dated:   August 19, 2015                              _____
                                                       YVONNE GONZALEZ ROGERS
                                                       United States District Judge

United States District Court
Northern District of California

18